IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-29J |
| ) | |
| RUSSELL T. GIARDINA, ) | JUDGE GIBSON |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

**GIBSON, J.**

This matter comes before the Court on the Defendant's Pretrial Motions (Document No. 31): Motion for Discovery, Motion for a *James* Hearing, Motion for Government Agents and State and Local Law Enforcement Officers to Retain Rough Notes and Writings, Motion to Disclose and Exclude Uncharged Misconduct Evidence, Motion for Early Disclosure of Jencks Materials, Motion to Compel Notice by the Government of Its Intention to Use Certain Evidence, and Motion for Independent Testing of Evidence. For the reasons stated herein, the Court grants the Defendant's Motion for a *James* Hearing, Motion for Government Agents and State and Local Law Enforcement Officers to Retain Rough Notes and Writings and Motion for Independent Testing of Evidence and denies all other motions.

**MOTION FOR DISCOVERY**

The Defendant requests discovery of various materials including all evidence subject to FED. R. CRIM. P. 16, all statements of "witnesses or participants favorable to [D]efendant," as well as all *Brady* and *Giglio* material. The Defendant cites no specific concern that the Government will not produce these materials. The Government avers that it has complied with FED. R. CRIM. P. 16 and Local Rule 16.1, has

produced discovery materials to Defendant's former and current counsel a total of three times and notes that its recognizes that its obligations are continuing. The Court will deny the Motion for Discovery as the Defendant has not set forth any specific material that it believes has not been produced by the Government; without a true controversy as to a failure to produce discoverable materials, the Court finds no justification to order discovery that the Government has already produced and knows it must supplement. This motion is denied as moot.

**MOTION FOR *JAMES* HEARING**

The Defendant moves for a *James* Hearing to be conducted before trial in this matter begins arguing that the Government may wish to introduce alleged co-conspirator statements into evidence through Federal Rule of Evidence ("F.R.E.") 801(d)(2)(E). The Defendant contends that there is a question as to whether the Defendant was a member of any conspiracies as alleged in the indictment. Among the precedent the Defendant relies upon for the request for a pretrial hearing is F.R.E. 104(a) and *United States v. James*, 590 F.2d 575 (5th Cir. 1979)(*en banc*).

The Government argues that there is no need for a pretrial hearing to determine admissibility of possible co-conspirator statements as the order of proof is within the discretion of the Court and that the Government can produce its evidence during trial as it does not believe there is a need to hold a "mini-trial" in order to establish the existence of a conspiracy. Government Motion, p. 7.

Initially, it must be noted that the admission of co-conspirator statements is governed by F.R.E. 104(a). *United States v. Ammar, et al.*, 714 F.2d 238, 247 n.5 (3d Cir. 1983). The proponent of the co-conspirator statement(s) must prove by a "clear preponderance of the evidence" that a conspiracy existed, the defendant and the declarant were members of the conspiracy and that the declarant made the

statements "during the course and in furtherance of the conspiracy." *United States v. Ammar, et al.*, 714 F.2d 238, 246 (3d Cir. 1983); *U.S. v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998); F.R.E. 801(d)(2)(E). The statements sought to be admitted under this Rule are not in and of themselves sufficient proof of "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered" but may be used as evidence of such facts. F.R.E. 801(d)(2). *U.S. v. Gambino*, 728 F.Supp. 1150, 1153-1154 (E.D.Pa. 1989). The question in the case *sub judice* is the order of proof for these statements.

The Court of Appeals for the Third Circuit has not endorsed a preferred method for district courts to determine the admissibility of statements under F.R.E. 801 (d)(2)(E), but has noted that such a decision as to the order of proof is at the discretion of the respective district judges. *United States v. Ammar, et al.*, 714 F.2d 238, 246 (3d Cir. 1983). Prior to the *Ammar* opinion, in *United States v. Continental Group, Inc.*, 603 F.2d 444 (3d Cir. 1979), the Court of Appeals noted that foregoing a pretrial hearing on the admissibility of a co-conspirator's statements in favor of permitting submission of such proof at a jury trial subject to "connecting up" such statements with the requisite foundational evidence necessary for their admission is to be done with caution:

> *We agree that the danger of prejudice to the defendant inherent in the practice of admitting coconspirator declarations, otherwise hearsay, subject to later proof of the requisite conspiracy, dictates that the practice be carefully considered and sparingly utilized by the district courts.* Nonetheless, given the large amount of interrelated testimony to be considered in this case, we believe that alternative approaches may have been unduly complex and confusing to the jury or to the court. We therefore conclude that the district court's decision to admit such declarations "subject to later connection" was not inconsistent with the sound exercise of its discretion.

*U.S. v. Continental Group, Inc.* 603 F.2d 444, 457 (3d Cir. 1979)(emphasis added).

The Court believes that conducting a pretrial hearing on the admissibility of the alleged co-conspirator statements is the best practice in the case *sub judice* for three reasons. First, the Court recognizes that the parties can actually benefit from being outside the strictures of the Federal Rules of Evidence in a Rule 104 (a) hearing as the rule itself only binds the Court to those rules of evidence with respect to privileges and not any of the other rules of evidence. However, if the Court agreed with the Government's preference of introducing statements at trial then attempting to connect them up with later testimony and evidence, such introduction of evidence would be subject to all of the Federal Rules of Evidence, not just those concerning privileges. WEINSTEIN'S FEDERAL EVIDENCE § 801.34[6][c] (Joseph M. McLaughlin ed., 2d ed. 2005); F.R.E. 104(a).

Second, this case does not involve a complex conspiracy with multiple defendants like that in *Continental Group*, where "multiple defendants and a 'large amount of interrelated testimony'" were involved. *Ammar* at 246-247 (citing *Continental Group, Inc.*, 603 F.2d at 457). The present case concerns only one defendant under a two count indictment and neither of the counts are for conspiracy but for two violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(c) (distribution of less than 100 grams of heroin). Therefore, the Court does not foresee a pretrial hearing on this matter evolving into a mini-trial.

Third and finally, the Court notes the potential for a mistrial in situations where the "connecting up" of a statement introduced into evidence is not made with the foundation evidence proving the existence of a conspiracy, its membership and the context of the statements introduced. While the Court does not know the extent of the Government's evidence, it assumes that the Government possesses the necessary foundational evidence for the proposed co-conspirator's statements. Although it is very unlikely that the Government will not "connect up" the foundational evidence to any co-conspirator

statements being introduced, in the event the connection is not made the potential for a mistrial is great. Therefore, the Court prefers conducting a pretrial hearing in this matter in order to limit any need for declaring a mistrial should the Government not "connect up" its co-conspirator statements with the requisite foundational evidence.

The Defendant's Motion for a *James* Hearing is therefore granted and will be scheduled in a separate order.

### MOTION FOR GOVERNMENT AGENTS AND STATE AND LOCAL LAW ENFORCEMENT OFFICERS TO RETAIN ROUGH NOTES AND WRITINGS

The Defendant moves for an order of Court requiring all law enforcement agents who participated in the investigation of this matter

> to retain and preserve all rough notes and writings which are arguably producible to the defense pursuant to Title 18 U.S.C. Section 3500, Rule 26.2 of the F.R.Crim.P., or *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Soto*, 711 F.2d 1558 (11th Cir. Fla. 1983) or which may be used by the defense for impeachment purposes (including materials to assist in cross-examination pursuant to Federal Rules of Evidence 806), which notes and writings were made part of the investigation, notwithstanding that the contents of said notes or writing may be incorporated in office records, reports or memoranda.

Defendant's Motion, pp. 5-6. The Government does not object to preserving such materials and has already given such directions to the law enforcement officers in this matter, but in referring to *Ammar, supra*, argues that it is required to turn these material over to the Court only "if a question should arise as to whether the rough notes constitute either *Brady* or Jencks material, then the notes should be submitted to the Court for any such determination. No such question has arisen." Government's Response, p. 8.

The law of the Third Circuit was established in the case of *United States v. Vella*, 562 F.2d 275,

276 (3d Cir. 1977) wherein it was stated:

> To avoid future misunderstandings, we specifically adopt the precepts announced in *United States v. Harrison*, 173 U.S. App. D.C. 260, 524 F.2d 421 (1975), as the law in this circuit, to-wit, the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the appellant under the rule of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), or the Jencks Act.

The Court does not read *Ammar* in the manner the Government does and in fact finds that the language is different from Government's understanding:

> Although in most cases a rough draft may not be a Jencks Act "statement," we believe the same rationale which underlay our decision in *Vella* directing retention of rough notes is also applicable to handwritten drafts of agents' reports. We therefore hold that, hereafter, the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced. This requirement should impose no undue burden on the government.

*United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). Clearly, the Defendant has made such a motion and now the rough notes and writings of the law enforcement agents investigating this matter must be produced to the Court for *in camera* inspection. Should this material be found to be discoverable only then will it be ordered to be produced to the Defendant. The Defendant's motion is granted.

## MOTION TO DISCLOSE AND EXCLUDE UNCHARGED MISCONDUCT EVIDENCE

The Defendant seeks a pretrial hearing on the admissibility of evidence the Government intends to offer pursuant to F.R.E. 404(b) and asks that such proposed evidence be provided to the Defendant prior to such a hearing. The Government offers that it will produce such evidence within thirty days of the date of its response (October 13, 2005), but argues that the admissibility of such evidence should be determined at trial when the Court is able to put such evidence into the context of the Government's

entire case.

It has been noted by another district court in this circuit that issues regarding the admissibility of evidence pursuant to F.R.E. 404(b) should be determined at trial:

> Recently, the United States Supreme Court set forth the guidelines for admission of other crimes evidence in *Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). In *Huddleston*, the Court held that evidence of similar bad acts is admissible if there is sufficient evidence to support a jury finding that defendant committed the similar act. *Id.* The Court stated that, with this rule, protection from unfair prejudice emanates from four sources; first, that the other crimes' evidence must have a proper purpose; second, that the proffered evidence must be relevant; third, that its probative value must outweigh its potential for unfair prejudice; and fourth, that the court must charge the jury to consider the other crime's evidence only for the limited purpose for which it is admitted. *Id.* at 691-92, 108 S.Ct. at 1502. The court must examine all the evidence in the case and decide whether the jury can reasonably find the conditional fact by a preponderance of the evidence. *Id.* at 690, 108 S.Ct. at 1501-02.
> This court has previously held that the balancing of the prejudicial effect of the evidence against the probative value of the evidence of prior conduct, prior convictions, or bad acts "is most effectively done at trial when such evidence can be evaluated in the factual context of the government's case and the defense put forward." *Vastola*, 670 F.Supp. at 1268. Likewise, the court finds that the evaluation under *Huddleston* of the purpose and relevance of the other crimes' evidence is better evaluated within the context of the case. The court, therefore, will deal with these issues as they arise and outside the hearing of the jury. Defendants' motions for a pretrial hearing on the admissibility of prior bad acts under Rule 404(b), therefore, will be denied.

*U.S. v. Gatto*, 746 F.Supp. 432, 482 (D.N.J. 1990) *rev'd on other grounds*, *U.S. v. Gatto*, 924 F.2d 491, (3d Cir. 1991). *See also U.S. v. Azzarelli Const. Co.*, 459 F.Supp. 146, 153 (D.Il.1978); *United States v. Doby*, 665 F. Supp. 705, 713-714(N.D.In. 1987). This Court agrees with this approach as well and will defer decisions as to the admissibility of any of the government's F.R.E. 404(b) evidence until the time of trial as such evidence is offered. Assuming that the Government has produced the F.R.E. 404(b) material on October 13, 2005, the Defendant has already had ample time to review the F.R.E. 404(b) material and in consideration of the fact that this matter cannot go to trial earlier than the Court's next

7

trial term, which begins January 9, 2005, the Defendant will have further time to review this material. The Defendant's motion is denied.

## MOTION FOR EARLY DISCLOSURE OF JENCKS MATERIALS

The Defendant moves for early disclosure of Jencks materials by the Government based upon their alleged necessity for purposes of "due process of law, effective assistance of counsel and fair and efficient conduct of trial...." Defendant's Motion, p. 7. The Government notes that under the law it need not reveal this information until after a witness has testified, see FED. R. CRIM. P. 16; 18 U.S.C. § 3500, but that it will produce such material in accordance with its office policy, that is at least one to three days prior to the testimony of a witness for which such material exists.

The Court notes that its standard criminal pretrial order encourages early production of Jencks material by the Government at least three days prior to the commencement of trial, but the law previously prevented this Court from ordering production of Jencks material relating to any witness prior to the testimony of that witness on direct examination. *United States v. Murphy*, 569 F.2d 771, 773-774 (3rd Cir. 1978).

However, the Court recognizes that the holding in *Murphy* has been superseded since the addition of FED. R. CRIM. P. 12(i) in 1983 and the subsequent removal of that provision in 1993 to FED. R. CRIM. P. 26.2(g) where it provides for the production of Jencks material in a pretrial suppression hearing as well as in other pretrial events. *See United States v. Rosa, et al.*, 891 F.2d 1074, 1077 (3d Cir. 1989). The original text of FED. R. CRIM. P. 12(i) read: "(i) Production of Statements at Suppression Hearing. Except as herein provided, rule 26.2 [Jencks Act] shall apply at a hearing on a motion to suppress evidence under subdivision (b)(3) of this rule." *Id.* The *Rosa* Court was focused on the issue of Jencks material being

8

used in a post-trial sentencing hearing, not a production for general discovery purposes prior to trial or for a pretrial suppression hearing. Still, the point noted by the *Rosa* Court must be considered, but this Court does not believe it requires production of Jencks material based on what is essentially a general discovery request based upon considerations of trial efficiency. Furthermore, the Court notes that a pretrial suppression hearing is not scheduled before the Court, so no Jencks material needs to be produced at this stage of the proceedings under the Federal Rules of Criminal Procedure. *See* FED. R. CRIM. P. 26.2 (g)(limiting production of Jencks material prior to trial only for purposes of a detention hearing, a preliminary hearing, and a suppression hearing). Therefore, because the Defendant's request for Jencks material does not fall within the list of pretrial events outlined in FED. R. CRIM. P. 26.2(g) for which Jencks material must be produced, the Defendant's motion is denied.

## MOTION TO COMPEL NOTICE BY THE GOVERNMENT OF ITS INTENTION TO USE CERTAIN EVIDENCE

The Defendant moves the Court for an order compelling the government to produce any co-conspirator statements it intends to introduce at trial pursuant to F.R.E. 801(d)(2)(E) as well as any co-conspirator statements that were not made "during the course of and in furtherance of the conspiracy alleged." Defendant's Motion, p. 8.

In regard to the statements admissible under F.R.E. 801(d)(2)(E), the Court trusts that if such statements exist, they will be produced by the Government if they have not already. The Defendant makes another general request for information without support that the Government is withholding co-conspirator statements.

As to co-conspirator statements not qualifying under F.R.E. 801(d)(2)(E), the Court agrees with

the Defendant that admission of co-conspirator statements that are not made in the course of or in furtherance of the conspiracy would be inadmissible, primarily because they would be hearsay statements which could only be admitted if they qualified under an exception to the hearsay rule. The Defendant suggests there would be a *Bruton* problem with these statements and requests severance or redaction of the statements, but this is not necessary as the Defendant is the only defendant in this matter. Additionally, the Court does not currently see a *Bruton* or *Crawford* problem as there has been no suggestion that the declarants of the alleged co-conspirator statements cannot testify at trial.

Finally, the Defendant requests notice of any F.R.E. 404(b) statements the Government intends to introduce. The Court has already addressed this issue above and will not do so again. The Government intends to produce such statements by October 13, 2005 and their admissibility will be determined at trial and not at a preliminary hearing pursuant to F.R.E. 104.

The Defendant's motion is denied.

## MOTION FOR INDEPENDENT TESTING OF EVIDENCE

Defendant moves for the independent testing of the substance found to be heroin by a crime lab and that is alleged by the government to have been delivered by the Defendant on the dates of March 6 and March 20, 2003. The Defendant seeks the testing in order to "confirm the presence of heroin therein." Defendant's Motion, p. 10. The Government opposes such motion. It argues that "a defendant may inspect tangible objects if they are material to the preparation of the defense and if the government intends to use them in its case-in-chief." Government's Response, p. 17. The government also argues that in order for the Court to grant the Defendant's motion "under Rule 16, the defendant is required to show that the items sought are material to the preparation of his defense and that the request is reasonable.

United States v. Mesarosh, 13 FRD 180, 183 (W.D.Pa. 1952)." Government's Response, p. 17. The Government also notes that the heroin from the alleged March 6, 2003 delivery was "inadvertently" destroyed on October 22, 2004 and that defense counsel was informed of this fact on August 4, 2005. As a result, the Government argues that the request to test this part of the evidence is "moot" because of its destruction.[1]

The Court notes that the applicable rule for this motion is Federal Rule of Criminal Procedure 16 which reads in pertinent part:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

The clear reading of the rule demonstrates that a defendant's request for inspection must be permitted if any of the three circumstances exist, and it is not necessary to establish all three or even two of the three as suggested by the Government. Furthermore, the *Mesarosh* case, as cited by the Government, is no longer applicable to motions for inspection under FED. R. CRIM. P. 16. The 1974 amendment of FED. R. CRIM. P. 16 obviated the need to demonstrate materiality *and* reasonableness and required disclosure if any of the three conditions existed:

---

[1] The Court will not address the issue of the admissibility of information based upon the destroyed evidence or any sanctions for such destruction as the parties have not brought these issues before the Court.

11

The old rule requires a "showing of materiality to the preparation of his defense and that the request is reasonable." The new rule requires disclosure if any one of three situations exists: (a) the defendant shows that disclosure of the document or tangible object is material to the defense, (b) the government intends to use the document or tangible object in its presentation of its case in chief, or (c) the document or tangible object was obtained from or belongs to the defendant.

FED. R. CRIM. P.16 advisory committee's note.

It appears that the Defendant is not attempting to seek disclosure based upon a materiality argument but based upon the fact that the Government may use the actual heroin as evidence at the Defendant's trial: "Defendant seeks leave of Court to test each quantity of drugs which the Government intends to use as evidence against him by an independent testing laboratory to confirm the presence of heroin therein." Defendant's Motion, p. 10. The Court finds difficulty with this basis because it wonders how a defendant is to know whether a piece of evidence is going to be offered by the Government at trial. However, guidance is provided by the case of *U.S. v. Liquid Sugars, Inc.*, 158 F.R.D. 466 (E.D.Ca.1994). Although *Liquid Sugars* concerned a question of whether the defendant had met the materiality prong for the production of documents and tangible objects under Rule 16, its observation of the need for production of foundational evidence for reports to be produced at trial is helpful in our analysis of the case-in-chief prong of Rule 16:

> Where scientific methodology or data is involved in proving a defendant's guilt, it is unreasonable to expect defense counsel to be able to delve into technical aspects of that methodology/data on the spot at trial. As a practical matter, this type of information is often very difficult to prepare for in advance, despite the use of experts, as the precise methodology utilized by government experts will not often be known without advance discovery of the underlying methodology/data. *Further, the government will be required to establish a foundation for the test results when it first puts its expert on the stand at trial. That foundation is the information which defendants now seek.* Since the foundation is an essential element to the government's case-in-chief, it necessarily becomes "helpful to the defense." Moreover, for issues in which scientific data will be utilized, there are no

safety considerations which would be compromised by this rule. By having access to the requested information, the defense will not unfairly jeopardize the government's case--it will merely be able to properly challenge that case.

*U.S. v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471-472 (E.D.Ca. 1994)(footnote omitted)(emphasis added). *See also U.S. v. Shoher*, 555 F.Supp. 346, 352 (S.D. N.Y. 1983). Even though these cases concern the question of materiality, the concept of evidence to be used in the case-in-chief and the materiality prongs of Rule 16 are somewhat intertwined. Indeed it has been recognized that "[e]ven before the 1975 amendments, it was held that the fact that the government intended to use the evidence at trial was sufficient proof of its materiality, but this was made explicit by the changes in 1975." 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE, § 254 (3d 2000)(footnotes omitted).

The Court is without knowledge as to whether the Government intends to offer as evidence the actual heroin at issue, but absent a stipulation by Defendant, this is very likely. Considering that the jury's mere visual observation of the substance is not sufficient for it to conclusively find that it is in fact heroin beyond a reasonable doubt, it is most likely that both the actual heroin and the crime lab report will be introduced as evidence to prove that the Defendant delivered a substance which is heroin. Under either scenario, the actual heroin is central to the Government's burden to prove that the substance the Defendant was alleged to have delivered was heroin. Without this proof in its case-in-chief, the Government would not survive a Federal Rule of Criminal Procedure 29 Motion for a Judgment of Acquittal.[2] Therefore, proof that the Defendant did in fact deliver a substance found to be heroin is

---

[2] The case *sub judice* concerns a crime the requires proof that the substance at issue was in fact illegal and it is clear to the Court that such proof is necessary to be produced in the government's case-in-chief. However, the Court does not believe that in every case where evidence is sought under Rule 16(a)(1)(E)(ii) that it will always be clear that such evidence will be necessary for the Government to introduce in its case-in-chief and thereby require its production under this rule.

13

clearly required for the Government's case-in-chief and, in turn, production of the actual substance for non-destructive independent testing by the Defendant must be permitted under Rule 16. This is necessary because the production of the actual substance, and more specifically the testing thereof, is the foundation for the Government's conclusion that a crime was committed and subsequent prosecution of the Defendant for that crime. The substance alleged to be heroin is a critical element of the Government's case and test results proving its identity as a Schedule I substance will be a necessary piece of evidence in the government's case-in-chief. Such crime lab tests and results would not exist without the alleged heroin which was tested. Therefore, the remaining alleged heroin is evidence necessary to the Government's case-in-chief and is required to be produced for non-destructive, independent testing by the Defendant. As for the alleged heroin that was inadvertently destroyed, any request to test this substance is moot by reason of its destruction. The Defendant's Motion is granted in part and is moot in part.

    An appropriate Order follows.

**AND NOW**, this 17th day of November, 2005, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Pretrial Motions (Document No. 31) are GRANTED IN PART AND DENIED IN PART: the Defendant's Motions for a *James* Hearing, for Government Agents and State and Local Law Enforcement Officers to Retain Rough Notes and Writings, and for Independent Testing of Evidence are GRANTED and the Defendant's Motions for Discovery, to Disclose and Exclude Uncharged Misconduct Evidence, for Early Disclosure of Jencks Materials, and to Compel Notice by the Government of Its Intention to Use Certain Evidence are DENIED.

IT IS FURTHER ORDERED THAT the Government produce to the Court all rough notes and memoranda produced by any law enforcement officer involved in this case for *in camera* review within two weeks of this order.

IT IS FURTHER ORDERED THAT the Government produce to the Defendant or his agent for non-destructive testing the alleged heroin that remains within its possession that is the evidentiary basis of the indictment in this matter within two weeks of this order and any request to test alleged heroin previously destroyed is moot.

BY THE COURT:

_____
KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

cc:   William J. McCabe, Esq.
      Don A. Gerred, SAUSA